IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| QUALITY EYE ASSOCIATES, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil No. 22-2489 (RBK/SAK) |
| v. | : | |
| ECL GROUP, LLC, also known as EYE CARE LENDERS GROUP, LLC, also known as IMEDICWARE, and JOHN DOES 1-10, | : | OPINION |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

Presently before this Court is Defendant's Motion to Dismiss the Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). (ECF No. 3). For the reasons set forth below, Defendant's Motion to Dismiss is **DENIED IN PART AND GRANTED IN PART**.

**I.    BACKGROUND**

Plaintiff Quality Eye Associates, LLC brings this action against Defendants Eye Care Lenders, LLC (ECL) and John Does 1-10 over the failure of Defendant's software to maintain Plaintiff's electronic medical records (EMR). (Compl. ¶¶ 1-3, 10). The case comes before this Court after removal, pursuant to diversity jurisdiction as the Plaintiff is a citizen of New Jersey and Defendant is a citizen of North Carolina. (*Id.* ¶¶ 1-2).

Plaintiff is an optometrist medical practice, and Defendant is a medical technology company. The parties entered business together in 2010, when Defendant agreed to provide and maintain Plaintiff's billing and EMR software systems. (*Id.* ¶ 3). The EMR system contained patient medical and clinical data, demographic information, and billing and financial

1

information. (*Id.* at ¶ 14). Under their agreement, Defendant was responsible for ensuring that this important information was safely stored. (*Id.* at ¶ 5). The agreement was outlined in a letter on July 28, 2010, (Doc. 1-2, "Exhibit A"), and stated that the terms would renew automatically annually after year-three unless terminated by a party. (*Id.* at ¶ 6). The agreement was signed by both parties. (Doc. 1-2, "Exhibit A", at 4). Defendant represented that the program was regulation compliant in that it was ensured to save, retain, and store Plaintiff's data and that Defendants were continuously updating the program to ensure it remained that way. (Compl. ¶¶ 8-9).

On December 25, 2020, the software system crashed, and Plaintiff lost the vast majority of the EMR data from 2013 onwards. (Compl. ¶ 10). This amounted to 37,073 records of patient visits. (*Id.* ¶ 15). The records were permanently lost, despite Plaintiff undertaking extensive efforts both to ensure the data was backed up before the crash and to recover it after the crash. (*Id.* ¶ 23). Consequently, $990,000 worth of damage occurred, deriving from Plaintiff's inability to access existing patient information, lost patients, and from non-compliance with applicable laws and regulations directly resulting from losing this data. (*Id.* ¶¶ 17-19, 25).

Plaintiff claims that while the Defendant represented that the program was regulatory compliant and the information was therefore secure, the Defendant knew that this was not the case. (Compl. ¶¶ 20, 24). Plaintiff alleges that, contrary to Defendant's representations, the Defendant knew their programing was inadequate from February 2013 until the December 2020 server crash. (*Id.* ¶ 24).

Plaintiff brings claims for (1) breach of contract; (2) negligence; (3) common law fraud; and (4) a violation of the New Jersey Consumer Fraud Act. (Compl. ¶ 24). On April 28, 2020, the Defendant removed the case to federal court pursuant to diversity jurisdiction. (Doc. 1,

2

"Notice of Removal"). Presently before the Court is Defendant's motion to dismiss all claims. (1:22-CV-02489-RBK-SAK).

## II.   LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "take note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## III.   DISCUSSION

### A. Breach of Contract

In New Jersey, the elements of breach of contract are (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and (3) as a result, the plaintiff sustained damages. *Sheet Metal Workers Int'l Ass'n Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 199 N.J. Super. 212, 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)). A "complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached." *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, No. 10-5097 (DRD), 2011 U.S. Dist. LEXIS 24231 at *22 (D.N.J. Mar. 9, 2011).

Defendant moves to dismiss the breach of contract claim on the grounds that Plaintiff fails to identify a contractual obligation that was breached. Defendant argues that paragraph 28– "Defendant and its program failed to perform its obligations under the Agreement for EMR retention and storage"–is not sufficiently pled because it fails to describe "the specifications of the alleged subscription product called for by the contract nor the terms governing ECL's supposed duty to create that product". (Def. Mot. to Dismiss, at 6). Defendant does not contest that the parties entered a contract or that Plaintiff sustained damages. (*Id.*)

Defendant's argument falls short as Plaintiff pleads a specific contractual obligation that was breached. Namely, that ECL was responsible for ensuring the successful retention and storage of the electronic medical data that Quality Eye inputted into the system. The Plaintiff

4

pleaded this nearly verbatim in their complaint, (Compl. ¶ 28), and connected this obligation to specific wording in the agreement. (*Id.* ¶ 3; "Exhibit A", at 3). It is plausible to infer that a contractual obligation to set up and maintain an EMR system means that such system will function in serving its central purpose of safely storing the data. The fact that the contract does not specifically say that Defendant's product must function so to not delete all Plaintiff's data does not defeat the Plaintiff's claim. The spirit and whole purpose of the agreement was for Defendant to provide a software system that successfully stores Plaintiff's data. Therefore, Plaintiff has successfully plead that the Defendant breached a specific contractual provision.

Taking Plaintiff's pleadings as true, it is plausible that their allegations could raise a right to relief under breach of contract. There is no dispute that the parties entered a contract. (Doc. 1-2, "Exhibit A"). Also, it is plausible that losing seven-years of medical data could cause significant damages to a medical practice. It is alleged that these damages directly result from the breach as the failure of the software system to function in ensuring safe storage caused the data to be lost when the system crashed. Therefore, the Defendant's motion to dismiss the Plaintiff's breach of contract claim is denied.

   B. **Negligence**

The economic loss doctrine exists to "establish the boundary line between contract and tort remedies." *Dean v. Barrett Homes, Inc.*, 8 A.3d 766, 771 (N.J. 2010). It does so by prohibiting "plaintiffs from recovering in tort economic losses for which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Therefore, when parties are in a contractual relationship, the economic loss doctrine bars them from pursuing tort claims to recover purely economic losses caused by the other party's negligent performance of a contractual obligation. *People Express Airlines v. Consol.*

5

*Rail Corp.*, 495 A.2d 107, 112 (N.J. 1985). Consequently, a party can only maintain a negligence action, in addition to a contract action, if they can establish that an independent duty of care of breached. *Saltiel v. GSI Consultants, Inc.* 788 A.2d 268, 314 (N.J. 2002).

Plaintiff's negligence claim is barred by the economic loss doctrine. Plaintiff's right to have electronic medical records is not derived from an independent duty imposed by tort law. Rather, it flows from their contract with Defendant. Plaintiff could have kept physical records on their own or made their own EMR system. Then, tort law would impose an independent duty for Defendant to not harm Plaintiff's property that would apply in all circumstances. However, their EMR data was created strictly from the parties' contractual relationship, and Defendant harmed it in the context of their agreement. Defendant was required to design and implement a software system capable of storing medical data so the Plaintiff could input such data. It is alleged that Defendant failed to provide the software system that was bargained for, as the software delivered failed to store Plaintiff's data. Therefore, since no duty was breached independent of that created under contract, the economic loss doctrine bars the negligence claim.

C. **Common Law Fraud & Consumer Fraud**

The elements of common law fraud are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 313 (3d Cir. 2012) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

To state a claim under the New Jersey Consumer Fraud Act (NJCFA), a plaintiff must plead the following elements: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Zaman v. Felton*, 98 A.3d

503, 516-17 (N.J. 2014). Encompassed in "unlawful conduct" are "unconscionable commercial" practices. N.J. Stat. Ann. § 56:8-2. New Jersey courts have noted that "unconscionability is an amorphous concept obviously designed to establish a broad business ethic." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). The standard of conduct that the term "unconscionable" implies is lack of "good faith, honesty in fact and observance of fair dealing." *Id.*

Both Common Law Fraud and Consumer Fraud claims are subject to heightened pleading requirements. *Frederico v. Home Depot*, 507 F.3d 188, 199, 202 (3d Cir. 2007). Federal Rule of Civil Procedure 9(b) states, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." To satisfy Rule 9(b)'s particularity requirement a plaintiff must: (1) "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged"; and (2) "plead or allege the precise the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* at 200 (citing *Lum v. Bank of America*, 361 F.3d 217, 223-224 (3d Cir. 2004)).

Both fraud claims fail the Rule 9(b) particularity requirement for the same reasons. By stating that Defendant represented that the program was functional while knowing that it was not, Plaintiff does plead the circumstances of the alleged fraud with sufficient particularity. However, their claim fails to plead the date, time and place of this fraud or inject precision or substantiation. Plaintiff only alleges that the misrepresentation occurred from 2013 onwards. They do not plead specific days that misrepresentations were made, which of Defendant's employees made them, where they made them, or provide anything further to substantiate them.

7

Left with only the claim that, from 2013 until the date of the crash, Defendant represented that the program was functional while they knew it was not, the Plaintiff fails to pass the particularity standard of Rule 9(b). Accordingly, the fraud claims are dismissed.

### IV.     Conclusion

For the reasons set forth, Defendant's motion to dismiss the breach of contract claim is denied as Plaintiff has sufficiently pled all elements. Defendant's motion to dismiss the negligence claim is granted because the economic loss doctrine bars tort claims centered on the negligent performance of a contractual obligation. Defendant's motion to dismiss the Common Law Fraud and Consumer Fraud claims are granted as Plaintiff has failed to meet the Federal Rules of Civil Procedure 9(b) particularity requirement in its general claim that Defendant engaged in misrepresentations.

Dated: July 25, 2022                                                                /s/ Robert B. Kugler
                                                                                              ROBERT B. KUGLER
                                                                                              United States District Judge